**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 09 CR 446** |
| | ) | |
| **DAHVEED DEAN, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Dahveed Dean's (Dean) and

Defendant Terrance Daniels' (Daniels) post-trial motions. For the reasons stated

below, the motions are denied.

## BACKGROUND

On May 12, 2009, Dean and Daniels were charged in a six-count indictment.

Dean was charged in Counts One and Five with bank robbery in violation of 18

U.S.C. § 2113(a), and in Counts Two and Six with carrying a firearm in connection

with a crime of violence in violation of 18 U.S.C. § 924(c). Daniels was charged in

Counts One and Three with bank robbery in violation of 18 U.S.C. § 2113(a), and in

Counts Two and Four with carrying a firearm in connection with a crime of violence

in violation of 18 U.S.C. § 924(c). Counts One and Two relate to a bank robbery

that occurred on August 2, 2005, in South Holland, Illinois (Early August 2005
Robbery). Counts Three and Four relate to a bank robbery that occurred on August
25, 2005, in Skokie, Illinois (Late August 2005 Robbery). Counts Five and Six
relate to a bank robbery that occurred on December 20, 2005, in Chicago, Illinois
(December 2005 Robbery).

Prior to the trial, Dean filed several pre-trial motions, including (1) a motion to
suppress evidence relating to the surveillance and arrest of Dean on October 7, 2005
(October 2005 Evidence), (2) a motion to quash Dean's 2006 arrest and suppress
evidence relating to Dean's possession of two firearms on January 3, 2006 (January
2006 Evidence), (3) a motion to suppress telephone conversations recorded while
Dean was incarcerated at the Metropolitan Correctional Center (MCC Calls), and (4)
three motions to sever Dean's trial from the trial of his co-defendant. The court held
hearings relating to Dean's motion to suppress the October 2005 Evidence and
Dean's motion to suppress the January 2006 Evidence. After the hearings, the court
denied each of the motions. The court also denied Dean's motion to suppress the
MCC Calls and Dean's motions for severance.

On September 10, 2012, a jury trial commenced in the instant action. Due to
Daniels' prior disruptive behavior and his refusal to agree, under oath and prior to
the commencement of the trial, that he would not disrupt the proceedings, Daniels
was excluded from the courtroom during the trial pursuant to *United States v.
Benabe*, 654 F3d 753, 765 (7th Cir. 2011). On September 21, 2012, Dean was found
guilty by a jury on Counts One, Two, and Five, and not guilty on Count Six. Daniels

was found guilty by a jury on Counts One, Two, Three, and Four. Dean has now moved to arrest judgment, or alternatively, for a new trial. Daniels has now moved for a judgment of acquittal notwithstanding the verdict, or alternatively, a new trial, or a mistrial.

## LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 34 (Rule 34), "[u]pon the defendant's motion or on its own, the court must arrest judgment if: (1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34; *see also United States v. Boender*, 2010 WL 2523420, at *2 (N.D. Ill. 2010)(stating that Rule 34 "provides that the court must arrest judgment if 'the indictment or information does not charge an offense,'" and "[t]hus, the rule raises a pure question of law distinct from the evidence adduced at trial")(quoting in part *United States v. McLemore*, 815 F.Supp. 432, 433 & n.3 (S.D. Ala. 1993)).

A defendant in a criminal case who has been found guilty by a jury may move for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c) (Rule 29(c)). Fed. R. Crim. P. 29(c). If the defendant is challenging the sufficiency of the evidence presented at trial, the court must "consider the evidence in the light most favorable to the prosecution, drawing all reasonable inferences in the government's favor," and a "[r]eversal is appropriate only when, after viewing the evidence in such a manner, no rational jury 'could have found the defendant to have committed the

essential elements of the crime.'" *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006)(quoting *United States v. Masten,* 170 F.3d 790, 794 (7th Cir. 1999)); *see also United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)(stating that "[a] district court should grant a motion for a judgment of acquittal only when there is insufficient evidence to sustain a conviction"); *United States v. Pree*, 408 F.3d 855, 865 (7th Cir. 2005)(stating that a motion for acquittal should be granted "only if, viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt").

A court may provide a defendant found guilty of a crime by a jury with a new trial under Federal Rule of Criminal Procedure 33(a) (Rule 33(a)) "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision of whether a new trial is warranted is "committed 'to the sound discretion of the trial judge.'" *United States v. Gillaum*, 372 F.3d 848, 857-58 (7th Cir. 2004)(quoting *United States v. Woolfolk,* 197 F.3d 900, 904 (7th Cir. 1999)). In determining whether to grant a new trial, a court should exercise "great caution" and be "wary of second guessing the determinations of the . . . jury." *Id.* (internal quotations omitted)(quoting *United States v. DePriest*, 6 F.3d 1201, 1216 (7th Cir. 1993)); *see also United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006)(stating that "[a] defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict").

4

# DISCUSSION

## I.  Dean's Motions

Dean has filed a motion to arrest judgment pursuant to Rule 34.  Dean has also moved for a new trial pursuant to Rule 33.

### A.  Motion to Arrest Judgment

In his motion to arrest judgment, Dean has not pointed to any specific defects in the indictment or presented any specific arguments relating to the court's lack of jurisdiction.  Instead, Dean merely concludes that the indictment does not charge an offense and that the court did not have jurisdiction over the charged offense.  The indictment charges Dean with violations of 18 U.S.C. § 924(c) and 18 U.S.C. § 2113(a), and the court has jurisdiction over such offenses.  Therefore, Dean's motion to arrest judgment is denied.

### B.  Motion for a New Trial

In support of his motion for a new trial, Dean argues that the court erroneously denied the pre-trial motions referenced above.  Dean also argues that the court erred in allowing expert testimony relating to cell site records, in admitting testimony of Stanford Stogner (Stogner) relating to an unrelated act that occurred in January 2005,

5

in admitting testimony of Marcus Moore (Moore) relating to events that occurred on October 7, 2005, in admitting testimony and the handguns seized from Dean's car in January 3, 2006, and in admitting testimony of LaChaune Vance (Vance) regarding conversations between Vance and Dean without a proper foundation being laid. Dean further argues that the court erred by limiting Dean's cross-examination of Moore, by refusing to conduct a limited inquiry into the meaning of certain comments made by one of the jurors (Juror) after the trial, and by denying Daniels' and Dean's motion for a mistrial. In addition, Dean argues that his convictions were against the manifest weight of the evidence based on the physical descriptions given of the bank robber said to be Dean in the Early August 2005 Robbery and the December 2005 Robbery.

### 1. Rulings on Certain Pre-Trial Motions

Dean argues the court erred in denying certain of Dean's pretrial motions, identified above.

### a. Motion to Suppress October 2005 Evidence

Dean argues that the court erred in denying Dean's pre-trial motion to suppress evidence relating to the surveillance and arrest of Dean in October 2005. In support of his argument, Dean contends that he was arrested on October 7, 2005 without probable cause, and that none of the items recovered at the scene of his arrest

were ever connected to Dean in the charged bank robberies. The court has already ruled, after hearing and considering all the evidence presented on the issue, that there was probable cause to arrest Dean on October 7, 2005. Dean has not presented any new argument or evidence to the court relating to the issue of probable cause. In addition, the October 2005 Evidence was relevant to show Dean's planning and preparation for the December 2005 Robbery, since the testimony of a witness indicated that Dean planned to rob the same bank on October 7, 2006 that was actually robbed during the December 2005 Robbery a few months later. Therefore, Dean has not shown that the court erred in admitting the October 2005 Evidence.

### b. Motion to Suppress January 2006 Evidence

Dean argues that the court erred in denying Dean's pre-trial motion to suppress evidence relating to Dean's possession of firearms on January 3, 2006. In support of his argument, Dean contends that the January 2006 search of Dean's car and Dean's subsequent arrest was done in violation of Dean's Fourth Amendment rights. Dean also contends that admission of such evidence violated Federal Rule of Evidence 403 (Rule 403) because its probative value was substantially outweighed by a danger of unfair prejudice to Dean.

With respect to Dean's Fourth Amendment argument, Dean entered an unconditional guilty plea in the criminal case relating to his 2006 possession of firearms, thus the court noted that Dean may have waived his right to raise a later

7

Fourth Amendment challenge relating to that offense. *See, e.g., United States v. Cain*, 155 F.3d 840, 842 (7th Cir. 2004). In addition, the court held a hearing on October 17, 2007, so that the parties could present evidence relating to the circumstances of Dean's January 2006 arrest for possession of firearms. After considering the evidence presented by the parties, the court found that there was probable cause to arrest Dean on January 3, 2006. Thus, even if Dean had not waived his Fourth Amendment claim, the evidence showed that the claim was without merit. Dean has not presented any new argument or evidence with respect to the Fourth Amendment claim.

Dean's only new argument with respect to admission of the evidence relating to Dean's possession of firearms in early 2006 is that its probative value was substantially outweighed by its prejudicial effect. In support of his argument, Dean contends that the fact that Dean possessed firearms in January 2006 does not make it more or less likely that he committed the robberies at issue, or that he used firearms to commit such robberies. However, the robberies at issue in this case occurred in August 2005 and late December 2005, and the firearms were found in Dean's car two weeks after the commission of the latest robbery charged in this case. The proximity in time is close enough to support a reasonable inference that the firearms found in Dean's possession in January 2006 were the same ones used in the robberies, especially in light of the testimony from Dean's co-conspirator, Moore, indicating that Dean retrieved the firearms used in the December 2005 robbery from the same

location that they were found in January 2006. The evidence relating to Dean's January 2006 possession of firearms was not introduced for propensity purposes, and based on the evidence in this case, its probative value was not substantially outweighed by the danger of unfair prejudice to Dean. Therefore, Dean has not shown that the court erred in admitting the January 2006 Evidence.

### c.  Motion to Suppress MCC Calls

Dean argues that the court erred in admitting the MCC Calls. In support of his argument, Dean contends that he never consented to the recording of the MCC Calls. However, Dean has not presented any new argument or evidence to the court on the issue of his consent, and the court has already ruled on that issue. Dean also contends that only a select portion of the MCC Calls was played for the jury, and that the probative value of the MCC Calls was substantially outweighed by their prejudicial effect. Dean did not make such objections at trial, nor did Dean request additional portions of the MCC Calls be played. In addition, the MCC Calls were highly probative, and Dean has not made any arguments concerning how the MCC Calls were prejudicial to him. Therefore, Dean has not shown that the court erred in admitting the MCC Calls.

### d.  Motions for Severance

Dean argues that the court erred in denying his motions for severance. Dean

has presented the same arguments to the court in the instant motion that he presented in his three prior motions for severance. In denying Dean's three prior motions, the court explained the basis for its rulings in detail. Dean has not presented any new argument or evidence to the court relating to why his trial should have been severed from the trial of Daniels. In addition, the court notes that the court took steps, such as giving limiting instructions to the jury, to insure that evidence relating solely to Daniels was not considered by the jury in reaching their verdict with respect to Dean. Based on the above, Dean has not shown that the court erred in denying his motions for severance.

### 2. Expert Testimony Regarding Cell Site Records

Dean argues that the court erred in admitting expert testimony relating to cell site records. Dean has presented the same arguments to the court in the instant motion that he presented in his motion in limine seeking to exclude such expert testimony. In denying Dean's motion in limine on this issue, the court found that the testimony was reliable and that it would assist the trier of fact to determine a fact at issue. Dean has not presented any new arguments or evidence to the court relating to why expert testimony relating to cell site records should have been excluded. Further, the court notes that such testimony is generally accepted in the Seventh Circuit, and that the expert's testimony was limited in scope. Therefore, Dean has not shown that the court erred in admitting the expert testimony relating to cell site

records.


### 3.  Stogner's Testimony

Dean argues that the court erred in admitting the testimony of Stogner.  In support of his argument, Dean argues that Stogner's testimony was improper Federal Rule of Civil Procedure 404(b) (Rule 404(b)) evidence because, according to Dean, it related to an incident that occurred in January 2005, almost eleven months prior to the December 2005 Robbery.  Pursuant to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b).  The court did not admit the testimony of Stogner under Rule 404(b).  Instead, Stogner's testimony was admissible as direct evidence of Dean's participation in the December 2005 Robbery.  Stogner testified that he could not recall the exact date of the occurrence at issue.  Based on the other evidence presented during the trial, the jury could have reasonably inferred that Stogner's testimony related to events that occurred on the same day as the December 2005

11

Robbery. Therefore, Dean has not shown that the court erred in admitting Stogner's testimony.

### 4. Admission of Moore's Testimony Relating to October 7, 2005

Dean argues that the court erred in admitting the testimony of Moore relating to the events that occurred on October 7, 2005. The court already ruled that the October 2005 Evidence was admissible. Dean contends that such evidence was not proper Rule 404(b) evidence. However, the October 2005 Evidence was not admitted under Rule 404(b), but instead was admitted as direct evidence of Dean's participation in the December 2005 Robbery. Therefore, Dean has not shown that the court erred in admitting Moore's testimony relating to October 7, 2005.

### 5. Evidence Relating to Dean's January 2006 Gun Possession

Dean argues that the court erred in admitting evidence relating to Dean's possession of firearms on January 3, 2006. The court already ruled that the January 2006 Evidence was admissible. Dean contends that the January 2006 Evidence was not proper Rule 404(b) evidence. However, the January 2006 Evidence was not admitted under Rule 404(b), but instead was admitted as direct evidence of Dean's participation in the December 2005 Robbery. Therefore, Dean has not shown that the court erred in admitting the January 2006 Evidence.

6.  Admission of Vance's Testimony

Dean argues that the court erred in admitting testimony from Vance regarding conversations Vance had with Dean because, according to Dean, a proper foundation had not been laid regarding the conversations.  At trial, Dean's counsel objected to the admission of Vance's testimony on the same grounds.  The court instructed the Government to lay additional foundation for the conversations, and the Government laid additional foundation.  The foundation laid by the Government was sufficient, and Dean's counsel made no further objections to the testimony.  Further, in the instant motion, Dean has not made any specific arguments relating to how or why the foundation laid by the Government was insufficient.  Therefore, Dean has not shown that the court erred in admitting the testimony of Vance.

7.  Cross-examination of Moore

Dean argues, without providing any specific citations to the record, that the court improperly limited his attorney's cross-examination of Moore during trial.  In support of his argument, Dean contends that his counsel should have been allowed to cross-examine Moore regarding his drug use on October 7, 2005, and regarding Moore's prior grand jury testimony relating to whether Stogner entered a room where money was being counted by Dean.  The Seventh Circuit has stated that "[t]he right to cross-examination is not unlimited; trial courts have wide latitude 'to impose

13

reasonable limits on such cross-examination. . . .'" *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012). Dean's cross-examination of Moore was lengthy and thorough. The court sustain objections where appropriate. Dean had ample opportunity to explore Moore's possible bias and motives for testifying. *See id.* at 1020-21 (indicating that the motives or bias of a witness "are core Confrontation Clause concerns"); *see also United States v. Walker*, 673 F.3d 649, 657 (7th Cir. 2012)(stating that "the Confrontation Clause may be violated if [the] limitations [on a cross-examination] completely foreclose a defendant from exploring the witness' bias or motive to testify"). Further, the court notes that Dean was permitted to cross-examine Moore regarding Moore's drug use on October 7, 2005. (9/11/12 Tr., 59-61). Based upon the above, Dean has not shown that the court erred with respect to any ruling relating to the cross-examination of Moore.

### 8. Juror Comments

Dean argues that the court erred when it failed to conduct a limited hearing relating to the Juror's message that she felt "bullied" into rendering a guilty verdict. Federal Rule of Evidence 606(b) (Rule 606(b)) provides that, except in extremely limited circumstances, "a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment," and that "[t]he court may not receive a juror's affidavit or evidence of a

14

juror's statement on these matters."  Fed. R. Evid. 606(b).  In this case, there was absolutely no indication that any of the exceptional circumstances were present, so as to make a limited inquiry of the Juror appropriate.  *See* Fed. R. Evid. 606(b)(2)(indicating that "[a] juror may testify about whether: (A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form"); *see also Willis v. Lepine*, 687 F.3d 826, 835 note 1 (7th Cir. 2012)(indicating that Rule 606(b) "clearly prohibits the court from introducing any material that evinces how the jury arrived at its verdict").  The Juror's comments did not allude to any extraneous prejudicial information, any outside influence, or any mistake.  Therefore, the court's decision not to hold a hearing to address the Juror's comments was in complete conformity with Rule 606(b) and Seventh Circuit precedent.  Based upon the above, Dean has not shown that the court erred in declining to hold a hearing relating to the Juror's comments.


### 9.  Motion for Mistrial

Dean argues that the court erred in denying the Defendants' motion for a mistrial and in declining to conduct a hearing relating to the Court Security Officer's (CSO's) contact with the Juror.  After the trial concluded, the court inquired into the circumstances surrounding the CSO's contact with the Juror, and was advised by the CSO that the only contact he had with the Juror occurred after the jury had finished

15

its deliberations and reached its verdict. In addition, the CSO's contact with the Juror solely involved the Juror's comment to the CSO that she was having an anxiety or panic attack and did not want to remain in the jury room after the deliberations had concluded and only after the jury foreperson had already indicated to the court that the jury had reached its verdict. Based on such facts, the CSO's contact with the Juror is not grounds for a mistrial. In addition, the Juror's comments to the CSO do not indicate that the Juror was incompetent to serve on the jury, as Defendants suggest, nor would it have been permissible for the court to allow the Juror to testify on the issue of her competency. *See, e.g., Tanner v. United States*, 483 U.S. 107, 118 (1987). Further, all of the evidence in this case indicates that the Juror's was fully competent to serve on the jury, including the voir dire of the Juror, the Juror's punctual and consistent attendance throughout a lengthy trial, the Juror's participation in four days of jury deliberations, the Juror's signature and date on the verdict form, and the Juror's individual affirmation of her verdict during polling and the Juror's affirmation collectively with the other jurors. Based upon the above, Dean has not shown that the court erred in denying the motion for a mistrial or in declining to hold a hearing relating to the CSO's contact with the Juror.

### 10. Sufficiency of Evidence

Dean argues that his conviction was against the manifest weight of the evidence. The Seventh Circuit has stated that "[a] defendant who challenges the

16

sufficiency of the evidence faces a nearly insurmountable hurdle [in that] [the Court] consider[s] the evidence in the light most favorable to the Government, defer[s] to the credibility determination of the jury, and overturn[s] a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Gougis*, 432 F.3d 735, 743-44 (7th Cir. 2005)(internal quotations omitted)(quoting *United States v. Jackson*, 177 F.3d 628, 630 (7th Cir. 1999)). Dean contends that the physical descriptions given by the witnesses to the Early August 2005 Robbery and the December 2005 Robbery were inconsistent, and thus the jury could not have reasonably concluded that the same individual committed both robberies. The Government presented evidence against Dean that included testimony of Dean's co-conspirators, cell site evidence, evidence relating to Dean's cash spending after the robberies occurred, Dean's possession on October 7, 2005 of supplies that could be used to carry out a bank robbery, testimony by Stogner relating to Dean counting a large sum of money at Stogner's house, and MCC Calls indicating Dean committed the crimes for which he was charged. Based on all of the evidence presented in the case, there was "a reasonable basis in the record for the jury's verdict," notwithstanding the possibly conflicting physical descriptions provided by the bank teller witnesses, who the court notes were also victims of the charged crimes. *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000). Dean has not shown that the evidence was deficient in any manner that would warrant a new trial in the interest of justice.

17

11.  Cumulative Effect of Purported Errors

Dean argues that the cumulative effect of the errors discussed above warrant a new trial.  As discussed above, Dean has not shown that the court erred.  Therefore, Dean has not shown that the cumulative effect of any purported errors warrants a new trial.  Based upon the above, Dean's motion for a new trial is denied.

II.  Daniels' Motions

Daniels has moved for a judgment of acquittal pursuant to Rule 29, or alternatively, a new trial pursuant to Rule 33, or a mistrial.  In support of his motions, Daniels argues that the evidence presented against Daniels was insufficient to sustain a conviction, that the court erred in limiting Daniels' cross examination of Vance and Moore, that the court erred in excluding Daniels from the courtroom during trial, and that the court erred in not conducting hearings relating to the Juror to ascertain what she meant by the term "bullying" and the circumstances relating to her purported "panic attack."

A.  Sufficiency of the Evidence

Daniels argues that the evidence presented against him was insufficient to sustain a conviction, and that it was error for the court to deny Daniels' previous motions for a judgment of acquittal.  The evidence presented against Daniels

included witness and co-conspirator testimony about the Early August 2005 Robbery and Late August 2005 Robbery, cell site records showing the location of Daniels' cell phone before and after those robberies, evidence relating to the cars used in connection with the Late August 2005 Robbery, and physical evidence connected to the Late August 2005 Robbery upon which Daniels' DNA and fingerprints were found. In addition, surveillance videos and photos corroborating the testimony of the witnesses and co-conspirators was presented. Thus, with respect to every count of the indictment brought against Daniels, there was ample evidence upon which a rational jury could convict him. To the extent that Daniels challenges the credibility of Daniels' co-conspirators, Daniels had ample opportunity to raise credibility and bias issues when cross-examining such witnesses. This court's role in ruling on post-trial motions is not to second-guess the jury's credibility determinations. *Galati*, 230 F.3d at 258 (stating that "[i]n assessing the sufficiency of the evidence, the court will not re-weigh the evidence or judge the credibility of witnesses" and "[a]s long as there is a reasonable basis in the record for the jury's verdict, it must stand"). Daniels has not shown that there is no reasonable basis in the record to support the jury's verdict. Therefore, based on the above, Daniels' motion for a judgment of acquittal is denied.

B. Cross-examinations of Moore and Vance

Daniels argues, without citing to any specific portions of the record, that the

court erred in limiting his attorney's cross-examinations of Moore and Vance relating to issues of their prior criminal activity. As discussed above, it is entirely appropriate for a court to impose reasonable limits on cross-examination. The court permitted Daniels' counsel to conduct a lengthy and thorough cross-examination of both Moore and Vance. In addition, the court permitted Daniels' counsel to inquire into both Moore's and Vance's means of support during the relevant time period. (9/11/12 Tr. 120-122); (9/12/21 Tr. 36-40). The court limited the cross-examination of Moore and Vance only when such cross-examination became repetitive, cumulative, or irrelevant. Based upon the above, Daniels has not shown that the court erred in limiting the cross-examination of Moore and Vance.

## C. Daniels' Exclusion from the Courtroom During Trial

Daniels argues that the court erred in barring him from the courtroom during the trial. Beginning about a month before the trial, Daniels became disruptive to the proceedings, and continually refused to cooperate or recognize the court's authority. In addition, contrary to Daniels' assertion, on August 29, 2011, Daniels shouted at the court relating to his right to speak, in spite of the fact that he was being represented at the time by highly competent counsel, who had and continues to zealously advocate on Daniels' behalf. On multiple occasions leading up to the trial, the court warned Daniels that if he continued to be disruptive, he might be excluded

from the courtroom. Just prior to trial, the court gave Daniels an opportunity to agree that he would not be disruptive during the trial, and Daniels refused to do so. Pursuant to *Benabe*, 654 F3d at 765, Daniels thus waived his right to be present at trial. Daniels was not entitled to jeopardize the proceedings in a nearly two-week long trial, especially in light of the significant resources expended by the court, defense counsel, and the Government in connection with the trial. Any disruption by Daniels during the trial would have also been prejudicial to his co-Defendant Dean. In addition, after indicating to Daniels that he would be excluded from the trial due to his refusal to cooperate, the court also indicated to Daniels that he could attend the trial if, at any point, he would agree not to disrupt the proceedings. Further, the court ensured that Daniels would not be prejudiced by his absence by conducting a voir dire of the jury relating to the issue, and the court arranged for Daniels to view the trial on live video feed. Based on the above, Daniels has not shown that the court erred in excluding Daniels from the courtroom during trial.

### D. Juror's Comments

Daniels argues that the court erred in denying his prior motion for a mistrial, and has renewed his motion. Daniels also contends that the court erred in not holding a hearing at which the Juror and the CSO could be questioned. As discussed above, any inquiries made to the Juror would have violated Rule 606(b) and would not have been in compliance with Seventh Circuit precedent. In addition, there was

no need to conduct a hearing with the CSO, since there was ample evidence that the juror was competent to serve, and since the Juror indicated that she was experiencing a panic or anxiety attack only after the jury foreperson had already indicated to the court that the jury had reached its verdict.  Daniels has not shown that the court erred in denying his prior motion for a mistrial or in declining to hold a hearing involving the Juror and the CSO.  Based on the above, Daniels' motions for a new trial or a mistrial are denied.

## CONCLUSION

Based on the foregoing analysis, Dean's and Daniels' post-trial motions are denied.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:  December 14, 2012